## SAVINGS, BUILDING AND LOAN ASSOCIATION *v.* ELNATHAN TARTT.

1. GUARDIAN AND WARD. *Surety on guardian's bond. Death of surety. Limitation. Code 1892, § 1933. Probate of claim.*

     The liability of a surety on a guardian's bond is not a probatable claim against the estate of a deceased surety, and is not barred by any statute of limitations relating to the probate of claims against estate of decedents (code 1892, § 1933).

2. SAME. *Liability of deceased surety's land. Code 1880, § 2025; code 1892, § 1881.*

     The liability of a surety on a guardian's bond is a debt within the statute (code 1880, § 2025; code 1892, § 1881) providing that the lands of a decedent's estate shall be chargeable with his debts, over and above what his personal estate may be sufficient to pay.

3. SAME. *Caveat emptor. Innocent purchaser.*

     Persons who buy land from the heirs of a deceased surety on a duly recorded guardian's bond are not innocent purchasers. They buy *caveat emptor* and with constructive notice of the liability of the land in case the decedent's personal estate be insufficient to pay his debts.

FROM the chancery court of Lauderdale county.

HON. STONE DEAVOURS, Chancellor.

Tartt, the appellee, was complainant in the court below; the building and loan association and others, appellants, were defendants there. The controversy arose from the following facts: In 1877 Joel P. Walker became the guardian of Sallie and Elnathan Tartt. He received $12,000 for them, and gave a bond, in the penalty of $18,000, as guardian. One of the sureties on this bond was Peter Higgins. Higgins died intestate in 1881. His estate was administered upon in the chan-

cery court; notice to creditors given, debts probated and paid, and the administratrix made her final account, which was approved, and she discharged.   The lands belonging to his estate were sold by his heirs to various parties.   One of the wards [Sallie] became of age, and Walker settled with her.   Walker died in 1899, without making any settlement of the guardianship of appellee, Elnathan Tartt.   A few months after appellee became of age he filed the bill in this case against appellants, the heirs of Peter Higgins and their vendees.   The purpose of the bill was to charge on the lands of which Higgins died seized and possessed the amount of the debt, with statutory interest thereon, due by the guardian, Walker, to appellee, Tartt. Section 2025 of the code of 1880 (code 1892, § 1881) provides that the lands of a decedent's estate should stand chargeable with his debts, over and above what his personal estate might be sufficient to pay.   The defendants, in their answers, do not deny that they purchased the lands involved from the heirs of Peter Higgins; nor do they deny that the guardian was in default to complainant, as guardian, to the amount claimed.   They set up in defense the three, four, six and ten years' statute of limitations.   To certain portions of the lands several defenses were interposed, to wit: It was contended that some of the lands are not liable because the defendants had acquired title to them through a tax sale; that another portion was not liable to the lien because it had passed into the hands of innocent purchasers for value, without notice.   On these issues much testimony was taken, and the cause was heard on bill, answers and proof. There was a final decree rendered by the court below in favor of complainant, except as to the portion claimed under tax sale. From that decree defendants appealed, and complainant prosecuted a cross appeal to the supreme court.

For a previous report of this case, on appeal from a decree overruling a demurrer to the bill, see *Horne* v. *Tartt*, 76 Miss., 304.   The cases are the same, though titles different.

*Alexander & Alexander, Miller & Baskin,* and *T. G. Lewis,* for appellants.

The question presented by this appeal is of the gravest importance. On its determination must depend the stability and security of perhaps a majority of the land titles in the state. The view taken by appellee, and adopted by the learned judge below, if correct, will cause alarm, and necessarily wither, unsettle or disturb the titles of a majority of our landowners, or at least, make it impossible for them or their attorneys to ever pronounce with certainty on the validity of their titles.

The lands in the hands of the purchasers from the heirs, was not liable at common law, even as against the specialty debts of the intestate, which bind the heir, personally, to the amount of the land received; purchasers from the heirs were protected. See Williams on Executors, 794; 11 Am. & Eng. Ency. Law, 1096. It is useless to multiply authorities to show that the *bona fide* purchaser from the heir was protected under the common law. This will not be denied.

If there be liability, it must be statutory. The statutes which changed the common law, and which were in force when Peter Higgins died, were §§ 2025 and 2028, code of 1880. The former provided that the lands of the estate should stand chargeable for the debts over and above what the personal estate might be sufficient to pay. The latter defined and limited the rights of creditors who failed to probate their claims. These statutes, being an innovation upon the common law, will be given a strict construction. Bearing in mind this rule of construction, let us examine as to the meaning of the word debt. The land is charged only with debts of the decedent. The word debt does not include purely contingent liabilities. A liability is a responsibility; debt and liability are not synonymous. See Am. & Eng. Ency. Law, 984.

The word debt within the meaning of our bankruptcy laws, has never been held to embrace a contingent liability, the obligation of which is dependent on a few contingencies which

may never arise.   See *Sayre* v. *Glen*, 87 Ala., 631; *French* v. *Morse*, 2 Gray (Ill.); *Woodard* v. *Herbert*, 22 Me., 358 (111 Mo. App., 530); *Johnson* v. *Diamond*, 11 Exch., 73.

The essential difference between a liability and a claim or debt has been clearly pointed out by our own court in *Harris* v. *Hutchison*, 65 Miss., 9.   It holds that a contingent obligation, which may or may not become absolute, is not a claim within the meaning of §§ 2027, 2028, code of 1880, and; therefore, need not be probated.   The obligation of probating was decided in *Ales* v. *Plant*, 61 Miss., 259, to be for the protection of the heirs of estates against the assertion of unregistered claims. The purpose of registering claims was held to be "The speedy settlement of estates and the early ascertaining of the respective rights of creditors·and heirs."   The statute looks to the prompt distribution of both personalty and reality.   If the contingent obligation is a mere liability and not a debt, in the sense that it is not to be probated, then it should not be a debt within the meaning of § 2025, which charges the lands in favor of the creditor.   Both these sections look to the protection of the heir, as well as the creditor.   Section 2023 protects the creditor by making the lands chargeable, but protects the heir by providing that the lands "may be subject in the manner hereinafter directed."   When we come to see what is the manner directed, we find that "claims," whether due or not, must be registered, or they will be barred.   Contingent obligations which may never become absolute, are expressly held not to be within the purview of these statutes.   We ask, then, how can it be held that such an obligation is not a claim which can be probated, and at the same time that it is a debt which can be charged on the assets.   We, therefore, invoke a strict construction of the statute on the meaning of the word debts.   However, we do not invoke any stricter construction than our court has already given in the above decision.   In the next place, since a *bona fide* purchaser from the heir was protected at common law, the statute will not be construed to

deprive such purchaser of his protection. This would be to give it a broad and liberal construction instead of a strict one. The statute will be held to repeal the common law only so far as it plainly and expressly does so.

The *bona fide* purchaser is a favorite of the courts of equity. It is true there are cases which hold that express liens created by statute and growing out of contract, sometimes obtain even against *bona fide* purchasers. An instance of this sort is found in the reservation of titles by the seller of a chattel, but these cases depend upon the rule of *caveat emptor*. This rule is universally applicable in the sale of chattels, except where changed by statute or by registry laws. But we know of no cases, and can conceive of no instance where a secret lien or equity on land is held superior to the claim of one who purchased the legal title to the land, without either actual notice or constructive notice of the equity. It must be borne in mind that this is not a statutory proceeding. As was pointed out in *Ales* v. *Plant*, under the code of 1880, land could be subject only in two ways: First, by petition by the administrator, and second (the remedy for the first time incorporated in our statute) by creditors, "who have procured their claims against the estate to be registered." See § 2047, code of 1888; *Ales* v. *Plant*, 61 Miss., 255.

This not being a suit by the administrator nor by a creditor whose claim has been registered, must be viewed as an independent proceeding in equity. The creditor comes asserting his equity, and is met by a superior equity in the defendants. This equity is not only superior in itself, but is first in point of time, and is forfeited by possession. Let us waive these equities, although it is the essence of the defense of the *bona fide* purchaser that it deals not with comparative rights of equities, but is a defensive shield, which the courts throw around the innocent purchaser. The overwhelming force of the *bona fide* purchaser as against the creditor can hardly be illustrated more strongly than by the present case. The com-

plainant comes asserting the technical statutory right an innovation upon the common law.    He plants himself upon § 2023 of the code of 1880 which makes the lands chargeable for the debts of the decedent in a certain manner therein pointed out. When we turn to the manner presented, we find that the remedy fails.   He cannot and does not avail of any statutory remedy, but falls back to the general equity jurisdiction, and when he does so he is met by the rule that equity will never enforce a recent lien on land against a *bona fide* purchaser of the legal title.    This view brings us face to face with the alarming results which will follow an affirmance.    Bear in mind that the appellee concedes everything except the legal proposition that nothing can relieve the lands from the charge of the statute so long as there is any liability, which in any manner can be enforced against the estate in the hands of the executor or heir. The logic of the contention, if not the contention itself, is that under no circumstances can the *bona fide* purchaser stand in a better attitude than the heir.    Let us push this proposition to its logical conclusion by an illustration or two.    There is no statute of limitation against the states or United States.    A debt or obligation to the state will remain unimpaired for a hundred years; indeed, indefinitely.    Is it conceivable that every purchaser of land, which at any time has descended to the heir, takes it at his peril, provided the ancestor was on a bond payable to the state?    The deed records may show the title perfect.    The administration may show the claims paid after public notice, and yet the land would remain bound for a hundred years in over a hundred, even a thousand, transfers to innocent purchasers.    Suppose the debt to the state arose not upon a bond, which might be discoverable, but upon a garnishment proceeding.    It would thus arise not by contract, but *in invitum*.    The garnishment might be in a remote country.    No record would show its existence.    It might ripen into judgment years after the death of the garnishee, and, yet, if administration is closed and the lands partitioned and sold, this liability would

remain a charge forever, merely because it was not a claim which was required to be probated. The contingent obligation may be on a bond in California, yet because it was not required to be probated, it would be required of the purchaser from the heir to take notice of it. Our laws do not require the impossible. It would be a reproach to our state if they did. We assert with confidence, that whatever loose expressions may have fallen from our judges, it has never been held, and never will be, that where a purchaser of land searches every record and every possible source of information as to the title, and does not and cannot discover a lien, that he must yet buy at his peril. The very fact that the ancestor is dead, and that he alone may know of the existence of a contingent obligation, undisclosed by record, is a strong reason why such obligations should not be presented against a *bona fide* purchaser.

Our registry laws are intended to protect the purchaser against every kind of title and equity. There are certain exceptions which necessarily are engrafted on this rule. Thus, for instance, a deed from a lunatic passes no title, but even then, the purchaser is protected by a presumption of sanity. But it is obvious from an examination of our registry laws, that they are intended to cover every kind of case, and to afford full protection to the *bona fide* purchaser. There are certain trusts that need not be recorded, such as resulting trusts. The purchaser under a judgment gets no greater title than the defendant had, but the judgment is not a right in the land, but a mere right to subject the defendant's interest in it. But even as against these secret equities, purchasers of the legal title direct from the owner, are protected. Complainants' case is not helped by a view of the comparative hardships which may result. The minor ward has many safeguards thrown around him by the law. The purchaser from the heir had nothing to protect him in his purchases, unless it be the shield of the *bona fide* purchaser. The law does not undertake to protect the rights of a *cestui que trust*, even though he be a

minor, against every possible contingency. Many of our statutes of limitation have no exceptions in favor of minors. This is true of the one-year statute, applicable to chancery sales. It is true of the one-year period for probating debts against the estates. If Higgins had borrowed money from Walker, guardian, it will not be denied that the minor would have lost his right against the estate by the failure of the guardian to probate the claim. The ward, it is true, would have his right against the guardian, but not against the estate of the debtor. Why should he occupy a superior right, when his guardian fails to probate the claim in this instance? True, the guardian by his own default had created the cause of action, but still, it was a liability, although contingent, and could legally have been asserted by the guardian during his minority. If the question be asked, "what protection does the law afford to a ward in a case like this?" we answer, that the chancellor is the guardian-in-chief, and the clerk of the chancery court is in a certain sense a vice-guardian. They both exercise an oversight over the guardianship. It is the duty of the clerk to require accounts to be filed regularly. It is the duty of the chancellor to see that these accounts are filed and are correct. A new bond can be required whenever necessary. Again, authority is given to the sureties, who apprehend danger, to require a new bond. It is fairly to be presumed that relatives of the ward, and others interested in him, will see that he receives his income. It may also fairly be presumed that when a surety dies, the guardian, or the clerk of the chancery court, or some one interested, will make inquiry into its effect on the bond, and as notice is given to the public, will take steps to establish the contingent liability, before final distribution of the estate. The purchaser from the heir after administration is closed, has no safeguards thrown around him. So long as the administration is open, he is chargeable with notice that there are, or may be, debts, and he cannot become a *bona fide* purchaser. But the final discharge of the administrator, and

the distribution of the estate certainly raises a fair presumption that there are no further claims or liabilities.

Certainly, the equity of a *bona fide* purchaser in a case like this, is stronger than the right of the heir in a case like *Ales* v. *Plant*. That was a decision under § 2028, code of 1880, which provided that creditors who failed to present their claims, should not be barred as to the surplus if presented before distribution. This section contains no exceptions in favor of minors, or in favor of contingent claims. Surely, a minor, whose guardian failed to present a note, though not due before the expiration of the year, must lose his right against both the personalty and the realty which has been distributed, and the person having a contingent claim, which is of less dignity than a debt, should lose his right after distribution, and after the land has passed to a *bona fide* purchaser.

The right asserted by complainant is not rested on his infancy, but on the fact that the claim was contingent and not required to be probated. Complainant does not invoke infancy as a saving against a bar, but relies on the fact that until the termination of the trust there was no right of action. If the land is chargeable in this case, it would be chargeable in any case of contingent liability, which did not become absolute until after distribution. The contention is that the land remains chargeable in favor of a contingent liability, unaffected by any lapse time, short of that which makes a liability absolute. The infancy of complainant in this case was a mere incident. We submit, therefore, that the equity of appellants is superior to that of appellee, independent of our registry laws, but when we strengthen and fortify this equity by the further consideration that the purchaser was in absolute reliance upon our registry laws and the public record, which did not and could not disclose the charge, the superior rights of appellants become manifest. The essential difference between sales of personalty and sales of realty is that in the one *caveat emptor* is the rule, except where transfers are required to be placed of record,

which is the exception instead of the rule, whereas, in sales of land, the purchaser is entitled to rely absolutely on the public records, so far as secret liens are concerned. There is nothing in *Ferguson* v. *Scott*, 49 Miss., 500, which militates against appellants. In that case Judge Simrall says that it is public policy deducible from our statute law that lands should not be tied up or restrained from alienation for an indefinite time. It is intimated that vendees of the heirs would stand on more favorable ground than the heirs. If this be true in any case, it must be true in this case.

The general outline of all statutes in America on this subject demands a speedy payment of decedent's debts, and distribution of the estate. The purpose of statutes allowing the executors to sell the land is to expedite final distribution. Courts of equity will refuse to aid creditors who wait until superior equities arise. See Woerner Am. Law of Adm., 1263, citing 19 Kan.; 67 Wallace, 521; *May* v. *Rogers*, 37 A. & M., 155.

*S. A. Witherspoon* and *Houston & Houston*, for appellee.

The question is not, as assumed by appellants, whether lands inherited forever remain subject to a secret charge in favor of a contingent liability of the deceased owner in the hands of an innocent, remote alienee where the charge was undisclosed and not discoverable from any public record; nor whether lands held by *bona fide* purchasers, however remote, would remain chargeable to the same extent and for the same length of time as lands continuously held by the heirs. The question is, whether these lands are subject to this liability, not probated or probatable, appellants having purchased them from the heirs less than ten years before this bill was filed, and with only such notice of our lien as is imputed to them from the statutes and from the record of this guardianship proceeding and particularly the bond and the index thereof. See acts 1876, pp. 179 and 180, sec. 4; code 1880, § 2098; code 1892, § 2187.

This bond was filed in the county where these lands lie.    The statutes under which the bill was filed are code 1871, §§ 1134 and 1148; acts 1876, p. 187, secs. 25 and 26; code 1880, §§ 2025–2047; code 1892, §§ 1881, 1893, 1894, 1904.

For decisions sustaining this suit, see this case on former appeal from decree overruling demurrer, 76 Miss., 304, and cases cited therein.

But, if the remedy had been enlarged by the code of 1880 or 1892, appellants could not complain of this, as the remedy can always be enlarged by the legislature, and Peter Higgins is conclusively presumed to have signed the bond with the full knowledge of this.

Is the liabilities of the guardian and his sureties a debt?    See *Coulter et al.* v. *Robertson*, 24 Miss., 330, 16th line; *Ames* v. *Dorroh*, 76 Miss., 196; *Patty* v. *Williams*, 71 Miss., 840.

If not a debt, then the lands, even in the hands of the heirs, would not be liable, as the statute only makes them liable for debts.    Debt is the general term and includes both claims and liabilities.    It is not a contingent liability in any view.

Are appellants *bona fide* purchasers?    It is not so agreed. They purchased, not from Peter Higgins, but from those claiming only a right to sell, as his heirs.    Appellants purchased *caveat emptor*.    They were charged with knowledge of the statutory lien and with knowledge of all that the court records of Lauderdale county show.    Possibly they might not have been charged with notice of a liability on a guardian's bond filed in California, or even in a county in Mississippi where the land was not situated.    This is a question more difficult than the one before the court, and one with which we have no concern.    The bond, after filing, was a public record, required to be recorded, and easily found through the index.

But, if appellants are innocent purchasers, they are not protected, as is shown by the authorities cited for appellants. Certainly not unless appellee delayed an unreasonable time after becoming *sui juris* or unless the appellants had held

adverse possession of the land for more than ten years before this bill was filed, and neither is true, as appears from the record.

Nor is the appellee barred of his remedy by any statute of limitations.

Argued orally by *C. H. Alexander*, for appellant, and by *W. T. Houston*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The liability of the surety on the guardian's bond is not a probatable claim. Hence none of the statutes of limitation which would bar such a claim have any application. There is a statute which would bar this debt, and but one; and that is the statute which would bar Tartt if he did not sue, after age, within the time prescribed by statute. *Yandell* v. *Pugh*, 53 Miss., 301; *Gillespie* v. *Hauenstein*, 72 Miss., 838 (17 South., 602). There ought to be no other bar, and it is doubtless the fact that there ought not to be which accounts for the pregnant fact·that the legislature never has prescribed one·for a debt like this. It would be in the highest degree unjust to infants to have any other bar. The liability of the surety is a debt, within the meaning of our statute, charging the debts of a decedent upon his lands. The heirs took the lands thus charged with this positive statutory lien, and cannot alien these lands, except subject to the charge. The guardian's bond is required to be recorded. This one was recorded in Lauderdale county. The purchasers from the heirs were charged with the knowledge which the records imparted—the records of the guardianship proceedings and the bond. There is no room here for the play of the doctrine of innocent purchasers. In no just legal sense can these purchasers from the heirs (charged with constructive knowledge of all the records disclosed) of lands which the heirs themselves took charged with the debt here sued for, by positive statute law, be called innocent purchasers. They bought *caveat emptor*. They got the lands,.

just as the heirs held them, subject to this charge—the payment of this debt. These purchasers, it must be noted, have not been in possession for ten years. That period has not elapsed since their purchase, before the filing of this bill. What is asserted here is not a mere equity. It is a legal charge fixed by statute. A most ingenious and very able argument has been made to show this to be a mere secret equity, a mere claim, not a debt, within the meaning of the statute; and the great hardship of this sort of case has been most earnestly pressed. All these contentions are unsound. The hardship would be quite as great against minors, on the other view. And the decisions of this state fully and clearly sustain the views set out.

We see no error in the method of computing the amount. The statutes are plain, and they, with the authorities, are all set out in briefs of appellee's counsel, and need not here be cited again.

The tax sale was void, and on the cross-appeal the case must be reversed as to that.

*Affirmed on direct appeal. Reversed as to tax sale on cross-appeal, and cause remanded, to be proceeded with in accordance with this opinion.*